# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DARNELL BRANCH, | : | |
| Petitioner, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-3532 |
| FRANKLIN J. TENNIS, *et al.*, | : | |
| Respondents. | : | |
| | : | |
| | : | |
| | : | |

## Memorandum and Order

YOHN, J.                                                              April 21, 2009

Presently before the court is petitioner Darnell Branch's motion for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  Branch is currently serving an aggregate term of twenty-

six to sixty years' imprisonment for three aggravated assault convictions and a conspiracy

conviction.  After conducting a de novo review of the Report and Recommendation of the late

United States Magistrate Judge Peter B. Scuderi, and upon consideration of petitioner's

objections thereto, the court will overrule petitioner's objections, adopt in substantial part the

Report, and approve the Recommendation.

## I.      Factual and Procedural Background

The Pennsylvania Superior Court, in reviewing Branch's direct appeal, summarized the

factual backdrop to Branch's convictions:

> The charges arose out of a gunfight which occurred on the street in broad daylight
> between [Branch], Bruce Burdine, and Timothy Davis on one side and Shawn Price,
> James Price and Woodrow Lawson on the other.  Shawn Price and Woodrow Lawson

1

were injured as was Jermaine Lipscomb, a four-year-old bystander.

*Commonwealth v. Branch*, 863 A.2d 1219 (Pa. Super. Ct. 2004) (unpublished table decision).  A

jury convicted Branch on June 14, 1999 of three counts of aggravated assault and one count of

conspiracy.  On July 27, 1999, Judge Greenspan sentenced Branch to ten to twenty years'

imprisonment for the first count of aggravated assault, eight to sixteen years' imprisonment for

the second count of aggravated assault, seven and one-half to sixteen years' imprisonment for the

third count of aggravated assault, and six months' to eight years' imprisonment for the

conspiracy count.  All terms of imprisonment were to run consecutively.

On August 4, 1999, Branch filed a timely notice of appeal in the Superior Court of

Pennsylvania.  The Superior Court dismissed Branch's direct appeal on April 17, 2000 for failure

to file a brief.  On February 21, 2001, Branch filed his first Pennsylvania Post Conviction Relief

Act ("PCRA") petition pursuant to 42 Pa. Con. Stat. §§ 9451 *et seq.*  In his petition, Branch

argued that his direct appeal counsel was ineffective for failing to file a brief in Branch's direct

appeal.  The PCRA court appointed counsel, and counsel subsequently filed a no-merit letter

pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988),[1] certifying that she

had reviewed the record and concluded there were no meritorious issues to advance before the

PCRA court.  On September 9, 2001, the PCRA court permitted counsel to withdraw and

dismissed the case.  Branch appealed, and on July 10, 2002, the Superior Court reversed the

PCRA court's dismissal and reinstated Branch's direct appeal rights *nunc pro tunc*.

---

[1] Under *Finley*, a PCRA court can grant leave for appointed counsel to withdraw from the
case upon the review of counsel's "no-merit" letter.  A no-merit letter must list each of the issues
counsel reviewed and explain the reasoning that led counsel to find that the petitioner's claims
lack merit.  *Id.* at 215.  The PCRA court then must engage in an "independent review" of the
record to decide whether petitioner's claims are indeed meritless.  *Id.*

Counsel was appointed, and on October 28, 2003, Branch filed a second direct appeal, raising ten claims:

(1) the Commonwealth committed prosecutorial misconduct when it introduced into evidence the appellant's involvement with the penal system;

(2) the Commonwealth improperly bolstered the testimony of James Price, one of the Commonwealth's witnesses, by stating to the jury that he was given immunity in exchange for his truthful testimony;

(3) trial counsel was ineffective for failing to object to evidence of appellant's other crimes being introduced into evidence and to the several instances of prosecutorial misconduct;

(4) the trial court erred in its failure to correctly charge the jury on the mere presence doctrine;

(5) trial counsel was ineffective for failing to object to the judge's instructions to the jury on mere presence;

(6) trial counsel was ineffective for failing to file a post-verdict motion that the verdict was against the weight of the evidence;

(7) the verdict was against the weight of the evidence;

(8) the verdict was contrary to law;

(9) the trial court should have granted appellant's request for a mistrial when the prosecution attacked the credibility of a witness;

(10) counsel was ineffective for not filing a motion to reconsider the sentence in that the sentence was unduly harsh.

(Pet.'s Obj. Rep. & Rec. Ex. A, Pet.'s Direct App. Br. at 5-6.)  On September 22, 2004, the Superior Court affirmed the judgment of sentence.  Branch did not seek an allowance of appeal to the Pennsylvania Supreme Court.  Thus, petitioner's judgment of sentence became final thirty days later, on October 22, 2004.  *See* 42 Pa. Con. Stat. § 9545(b)(3); Pa. R. App. P. 1113(a).

On November 10, 2004, Branch filed a second PCRA petition.  His second PCRA

petition raised four ineffective assistance of counsel claims:

> (1) defendant was denied his constitutional right to effective assistance of trial counsel, in that counsel failed to object when the Commonwealth unduly bolstered the trial testimony of Commonwealth witness James Price;

> (2) defendant was denied his constitutional right to effective assistance of trial counsel, in that counsel failed to object and request mistrial and/or curative instructions, when the Commonwealth presented and/or elicited in two areas Defendant's involvement in prior unrelated criminal activity;

> (3) defendant was denied his constitutional right to effective assistance of trial counsel, in that counsel failed to motion for judgment of acquittal to the charge of criminal conspiracy;

> (4) defendant was denied his constitutional right to effective assistance of trial counsel, in that counsel failed to object to the trial court's inadequate jury instruction on mere presence.

(*Id.* Ex. G, Pet.'s 2d PCRA Pet. at 5, 8, 11, 14.)  On March 7, 2006, Branch's appointed counsel filed a no-merit letter pursuant to *Finley*.  The PCRA court dismissed Branch's second PCRA petition on April 26, 2006 without holding a hearing.  Branch appealed this dismissal to the Superior Court, raising eleven issues for review:

> (1) the verdict was contrary to law;

> (2) it was prosecutorial misconduct when the district attorney introduced evidence of Appellant's involvement with the penal system;

> (3) the Commonwealth (district attorney) improperly bolstered the testimony of witness James Price by stating to the jury that he was given immunity for his truthful testimony;

> (4) the trial court erred in its failure to correctly charge the jury of the mere presence doctrine;

> (5) the verdict was against the weight of the evidence;

> (6) trial counsel was ineffective for not filing a motion to reconsider the sentence in that the sentence was unduly harsh;

(7) trial counsel was ineffective for failing to object to other crimes evidence and instances of prosecutorial misconduct;

(8) trial counsel was ineffective for failing to object to the judge's instructions to the jury on mere presence;

(9) PCRA counsel was ineffective for failing to file meritorious issues;

(10) appellant was denied his right to effective trial and PCRA counsel (layered ineffective assistance of counsel) in violation of his rights as protected by the Sixth Amendment to the United States Constitution and Article 1 § 9 of the Pennsylvania Constitution; and

(11) the trial court erred when it dismissed Appellant's PCRA petition without a hearing.

*Commonwealth v. Branch*, 919 A.2d 968 (Pa. Super. Ct. 2007) (unpublished table decision). The Superior Court affirmed the dismissal of petitioner's second PCRA petition on February 2, 2007, *id.*, and the Pennsylvania Supreme Court denied Branch's petition for allowance of appeal on July 18, 2007, *Commonwealth v. Branch*, 928 A.2d 1288 (Pa. 2007) (unpublished table decision).

On August 27, 2007, petitioner filed the instant habeas petition pursuant to 28 U.S.C. § 2254, together with a memorandum of law, asserting the following four claims:

[1] Petitioner was denied his constitutional right to due process of law, in that the state court applied an unreasonable determination of fact, and unreasonable principle of law, when ruling that petitioner's claim, that trial counsel was ineffective for failing to object to other crimes evidence, was waived.
. . . .
[2] Petitioner was denied his constitutional right to due process of law, in that the state court applied an unreasonable determination of fact in ruling that petitioner's PCRA claim—that he was denied effective assistance of trial counsel for failing to object to the trial court's inadequate jury instruction on mere presence—was undeveloped in the Superior Court brief, therefore waived.
. . . .
[3] Petitioner was denied his constitutional right, under the Sixth Amendment of the United States Constitution, to effective assistance of trial counsel, in that counsel

5

failed to object when the state prosecutor unduly bolstered the trial testimony of government witness James Price.

. . . .

[4] Petitioner was denied his constitutional right to effective assistance of trial counsel, under the Sixth Amendment of the United States Constitution, in that counsel failed to motion for judgment of acquittal to the charge of criminal conspiracy.

(Pet'r's Mem. Supp. Habeas Pet. 12, 22, 28, 34.)  In his petition, Branch asked the court to stay the federal habeas proceedings pending his exhaustion of his state court remedies, specifically, the litigation of a third PCRA petition.[2]  By order of August 8, 2008, I denied Branch's motion to stay his habeas proceeding.

On September 29, 2008, the late Magistrate Judge Peter B. Scuderi issued a Report and Recommendation that the court dismiss, as procedurally defaulted, all four of Branch's claims. Branch filed objections to the magistrate judge's Report and Recommendation on October 27, 2008.  Respondents did not file a reply.

## II.    Standard of Review

Where a habeas petition has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B), the court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  After completing such review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id.*

Magistrate Judge Peter Scuderi found that Branch's habeas petition should be dismissed for the following reasons.  First, Branch failed to exhaust his due process claims (claims one and

---

[2] On February 5, 2008, Judge Greenspan dismissed Branch's third PCRA petition as untimely.  Branch appealed the dismissal to the Superior Court on February 19, 2008.  On April 3, 2009, the Superior Court affirmed the PCRA court's decision.

two) in state court.  Though Branch did raise the issues underlying these claims in state court as

Sixth Amendment ineffective assistance of counsel claims, Branch never couched the claims as

due process violations in his state court appeals.  Moreover, because the time to exhaust had

passed, Judge Scuderi found that Branch could no longer exhaust his state court remedies and

that as a result, Branch's claims were procedurally defaulted.  Branch did not explain the reason

for his default, and Judge Scuderi found that dismissing Branch's due process claims as

procedurally defaulted did not work a miscarriage of justice.  Therefore, Judge Scuderi

recommended that the court dismiss Branch's due process claims.

Second, Judge Scuderi assumed, *arguendo*, that Branch raised claims one and two as

ineffective assistance of counsel claims under the Sixth Amendment.  Judge Scuderi held that

Branch's Sixth Amendment claims, if raised, would be procedurally defaulted because the

Superior Court relied on an adequate and independent state procedural ground when it affirmed

the PCRA court's dismissal of Branch's petition.  Specifically, the Superior Court held that

Branch failed to develop, in his appellate brief, his ineffective assistance of counsel claims.

Because of this failure, the state court found that Branch waived these claims.  Finding that

Branch did not provide an explanation for his default, Judge Scuderi recommended that the court

dismiss the Sixth Amendment construction of Branch's first two claims.

Finally, Judge Scuderi found that Branch did not raise his third or fourth claims in his

direct appeal or his PCRA appeal.  Because Branch could no longer exhaust these claims in state

court and because Branch provided no explanation for his default, Judge Scuderi recommended

that the court dismiss Branch's third and fourth claims as procedurally defaulted.

In response, Branch has filed objections to the Report and Recommendation with respect

to all of the magistrate judge's findings.  First, with respect to his due process claims, Branch

argues that he could not have known of the violation until February 7, 2007, when the Superior

Court found that Branch failed to comply with state procedure and deemed his ineffective

assistance of counsel claims waived.  Second, Branch argues that the Superior Court's waiver

ruling was erroneous because he properly raised and developed his ineffective assistance of

counsel claims in his PCRA petition, which the Superior Court should have examined when it

reviewed the PCRA court's dismissal.  Finally, though Branch acknowledges that he did not raise

his third and fourth claims in the Superior Court, Branch argues, for the first time, that the prison

staff's harassment of a "jailhouse lawyer" prevented Branch, who is untrained in the law, from

raising these claims in his PCRA appeal.

The court addresses these issues de novo.

## III.   Discussion

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§

2241 *et seq.*, governs the court's review of this habeas petition.  Under AEDPA, a "district court

shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant

to the judgment of a State court only on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States."  *Id.* § 2254(a).  Habeas relief is

unwarranted "with respect to any claim that was adjudicated on the merits in State court

proceedings unless the adjudication of the claim . . .  resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established Federal law," § 2254(d)(1), or

"resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding," § 2254(d)(2).  Prior to reaching these

substantive issues, however, the court must first determine whether Branch's claims are properly before the court. *See Kindler v. Horn*, 542 F.3d 70, 78 (3d Cir. 2008) ("As a matter of comity and federalism, a federal court cannot rule on the merits of a habeas petitioner's claims when a state court has found such claims to be procedurally defaulted pursuant to an independent and adequate state procedural rule unless the petitioner shows cause and prejudice for the default.").

### A.     Procedural Default

#### 1.     Failure to Exhaust

Habeas courts can not grant habeas corpus relief under § 2254 "unless the petitioner has 'exhausted the remedies available in the courts of the State.'" *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (quoting 28 U.S.C. § 2254(b)(1)(A)). The requirement of exhaustion is "grounded in principles of comity . . . [giving] States . . . the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To fairly raise his claims, "a petitioner must 'present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005) (quoting *McCandless v. Vaughan*, 172 F.3d 255, 261 (3d Cir. 1999)). Importantly, in Pennsylvania, a petitioner need not seek review with the Pennsylvania Supreme Court to properly exhaust. *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004) (holding that Pennsylvania Supreme Court is "unavailable" for purposes of exhaustion, because Pennsylvania Supreme Court, by its own order, does not require a petitioner to appeal an adverse Superior Court ruling to exhaust). Thus, to satisfy § 2254(b)(1)(A), a petitioner must present his claims to the Pennsylvania Superior Court. *See Williams v. Folio*, No. 07-1099, 2008 WL 336306, *3 (E.D. Pa. Feb. 4, 2008) (stating that "a

habeas petitioner successfully exhausts a claim by bringing it to the Superior Court either on direct appeal or during PCRA proceedings").

If a petitioner's claims are unexhausted and the time for doing so has yet to pass, a petitioner should return to state court to exhaust the claims. However, if the time to exhaust such claims has passed, the unexhausted claims are procedurally defaulted because state procedural rules will bar petitioner from raising the unexhausted claims. *See Coleman*, 501 U.S. at 735 n.1 (reasoning that when "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas"). Unless the petitioner demonstrates cause and prejudice or a miscarriage of justice to overcome the default (discussed *infra*), the habeas court must dismiss the defaulted claims.

### 2.      Adequate and Independent State Procedural Rulings

"[I]f the final state court presented with [the] federal claim refuses to decide its merits based on an established state rule of law independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed unless there is cause and prejudice or a showing of innocence." *Sistrunk v. Vaughn*, 96 F.3d 666, 673 (3d Cir. 1996) (citing *Coleman*, 501 U.S. at 750 (1991)); *see also Wainwright v. Sykes*, 433 U.S. 72, 86 (1977) (articulating "cause and prejudice" standard). A rule is an "adequate" ground when it speaks in clear and unmistakable terms and when courts apply its requirements with consistency and regularity. *Campbell v. Burris*, 515 F.3d 172, 176 (3d Cir. 2008) (citing *Albrecht v. Horn*, 485 F.3d 103, 115 (3d Cir. 2007), *cert. denied* 128 S. Ct. 890 (2008)), *cert. denied*, 129 S. Ct. 71 (2008). That is, a "state procedural rule precludes federal habeas review only if it is 'firmly established' and 'consistently

and regularly applied' by the state's courts."  *Kindler v. Horn*, 542 F.3d 70, 78 (3d Cir. 2008);

*see Taylor v. Horn*, 504 F.3d 416, 428 (3d Cir. 2007).

　　　A state procedural ground is "independent" if it does not rest primarily on and does not

appear to be interwoven with federal law.  *Coleman*, 501 U.S. at 734-35 (citing *Michigan v.*

*Long*, 463 U.S. 1032, 1040-41 (1983)); *see also Campbell*, 515 F.3d at 177 (focusing inquiry on

whether "state law alone provides everything necessary to support the court's judgment").  The

independence of the state procedural ground must be clear from the face of the state court

opinion, meaning "the last state court rendering a judgment in the case [must] 'clearly and

expressly' state[] that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S.

255, 263-64 (1989) (applying *Michigan v. Long*'s "plain statement rule" to district courts

reviewing habeas petitions); *see Johnson v. Pinchak*, 392 F.3d 551, 557-58 (3d Cir. 2004).

Significantly, a state court does not abandon its "interests in finality, federalism, and comity" by

addressing the merits of a claim that is barred by a state procedural rule, so "long as the state

court explicitly invokes a state procedural bar rule as a separate basis for decision."  *Harris*, 489

U.S. at 264 n.10; *see Pinchak*, 392 F.3d at 558.

## B.　Overcoming Procedural Default

　　　A petitioner can overcome procedural default, and thereby empower the habeas court to

entertain the merits of the habeas claim, with a showing of "cause and prejudice" or by

demonstrating a fundamental "miscarriage of justice."  *Werts v. Vaughn*, 228 F.3d 178, 192-93

(3d Cir. 2000); *see also Coleman*, 501 U.S. at 750 (applying "cause and prejudice" standard to

district court review of habeas petitions).  To show "cause," a petitioner must establish that

"some objective factor external to the defense impeded counsel's [or petitioner's] efforts to

11

comply with the State's procedural rule." *Murray*, 477 U.S. at 488.  A petitioner can establish

cause "by showing, for example, that the factual or legal basis for a claim was not reasonably

available to counsel or that government interference made compliance with the procedural rule

impracticable." *Pinchak*, 392 F.3d at 563 (citing *Murray*, 477 U.S. at 488).  In addition, a

petitioner can rely on the ineffectiveness of trial and/or direct appeal counsel to establish "cause"

where counsel is constitutionally ineffective.  *Murray*, 477 U.S. at 488-89 (applying *Strickland v.

Washington*, 466 U.S. 668 (1984), standard); *see Pinchak*, 392 F.3d at 563.

     Even if a petitioner establishes a cause, the petitioner must also establish that the

procedural bar results in actual prejudice.  This "prejudice" prong requires that the "habeas

petitioner . . . show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but

that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions." *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S.

152, 170 (1982)) (emphasis in original).

     If a petitioner is unable to demonstrate cause and prejudice, a district court still can

consider the defaulted claims if the failure to do so would result in a fundamental miscarriage of

justice.  *Coleman*, 501 U.S. at 748.  The miscarriage of justice exception is "explicitly tied . . . to

the petitioner's innocence." *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *see Cristin v. Brennan*,

281 F.3d 404, 420-21 (3d Cir. 2002).  Thus, "the petitioner must show that it is more likely than

not that no reasonable juror would have convicted [the petitioner] in the light of the new

evidence." *Id.* at 327; *see also House v. Bell*, 547 U.S. 518, 536-37 (2006) (discussing

application of *Schlup* standard to "actual innocence" inquiry).  Innocence in this context "means

factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623

(citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

### C.    Petitioner's Claims

#### 1.    Claims 1 and 2

In his first two claims, Branch invokes federal due process as the basis for habeas relief.

For ease of reference, claims one and two read as follows:

> [1] Petitioner was denied his constitutional right to due process of law, in that the
> state court applied an unreasonable determination of fact, and unreasonable principle
> of law, when ruling that petitioner's claim, that trial counsel was ineffective for
> failing to object to other crimes evidence, was waived.

> [2] Petitioner was denied his constitutional right to due process of law, in that the
> state court applied an unreasonable determination of fact in ruling that petitioner's
> PCRA claim—that he was denied effective assistance of trial counsel for failing to
> object to the trial court's inadequate jury instruction on mere presence—was
> undeveloped in the Superior Court brief, therefore waived.

Importantly, Branch does not rely on his Sixth Amendment protections, as he did in his direct

and PCRA appeals.  Instead, Branch argues that the Superior Court's application of *state*

*procedural rules* denied him federal due process.  Branch has not raised these due process claims

in any state court.  Setting aside this fact, Branch's claims lack merit and I will dismiss claims

one and two accordingly.  *See* 28 U.S.C. § 2254(b)(2) (allowing court to reach merits of

unexhausted claim).

It is well-established that "'federal habeas corpus relief does not lie for errors of state

law.'"  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780

(1990)); *see* § 2254(a); *Tillery v. Horn*, 142 Fed. App'x 66, 68 (3d Cir. 2005) (reasoning, in case

where Superior Court found that the petitioner's claims were waived, that the petitioner was

"charging Pennsylvania with the erroneous application of its own procedural rule, which courts

have repeatedly counseled is not a cognizable claim on habeas").  This remains true even if the

state procedural ruling is incorrect.  *Estelle*, 502 U.S. at 71-72; *see Kontakis v. Beyer*, 19 F.3d

110, 117 n.12 (3d Cir. 1994) (reminding that "'a state court's misapplication of its own law does

not generally raise a constitutional claim'" (quoting *Geschwendt v. Ryan*, 967 F.2d 877, 888-89

(3d Cir. 1992))).  Rather, when "conducting habeas review, a federal court is limited to deciding

whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle*,

502 U.S. at 68; *see also Hatcher v. Jackson*, 853 F.2d 212, 214 (3d Cir. 1988) (assuming,

without deciding, that state court application of state procedural rule "may be so aberrant as to

create a due process violation").

     Here, Branch attacks the decision of the Superior Court, which held, when reviewing

Branch's PCRA appeal, that Branch failed to adequately brief and develop his constitutional

claims.[3]  Because of this failure, the Superior Court held that Branch waived the undeveloped

claims.  Branch argues that this decision was unreasonable.  Despite Branch's blanket assertion,

Branch has not demonstrated that the Superior Court's application of this rule was

constitutionally defective or even erroneous.  Branch plainly attacks the state court's *state law*

*ruling*, and because Branch fails to demonstrate that this ruling amounts to violation of federal

law, claims one and two are not cognizable on habeas review.  *Estelle*, 502 U.S. at 67; *Tillery*,

142 Fed App'x at 68.  I will dismiss each claim accordingly.

     Additionally, though Branch couches claims one and two as due process violations,

---

[3] Branch has not presented the court with his PCRA appellate brief, but he notes in his petition and objections that he filed some form of his direct appeal brief as his PCRA appeal. Branch has provided the court with a copy of his direct appeal brief.  Moreover, the Superior Court listed each of the claims Branch raised in its opinion, which both parties have presented to the court.

petitioner argues at length in his briefing that he was denied effective assistance of counsel.  Thus

I will assume, *arguendo*, that petitioner also raised claims one and two as ineffective assistance

of counsel claims under the Sixth Amendment.  Even while operating under this assumption, I

must dismiss petitioner's claims as procedurally defaulted.

As mentioned, when reviewing Branch's PCRA appeal, the Superior Court found that

Branch failed to develop his ineffective assistance of counsel claims "with appropriate

discussion, argument, and citation."[4]  Citing other Superior Court decisions, the Superior Court

held that Branch waived his ineffective assistance of counsel claims "because of his failure to

develop and argue them as required by the Rules of Appellate Procedure."  *Id.*  Though the

Superior Court does not cite any state procedural rule, the waiver rule relied on by the Superior

Court is derived from Pennsylvania Rule of Appellate Procedure 2119, which provides in part:

> **Rule 2119 Argument.**
> **(a) General rule.** The argument shall be divided into as many parts as there are
> questions to be argued; and shall have at the head of each part—in distinctive type
> or in type distinctively displayed—the particular point treated therein, followed by
> such discussion and citation of authorities as are deemed pertinent
>
> **b) Citations of authorities**. Citations of authorities must set forth the principle for
> which they are cited. Citations of uncodified statutes shall make reference to the book
> and page of the Laws of Pennsylvania (Pamphlet Laws) or other official edition, and
> also to a standard digest, where the statutes may be found. Citations of provisions of
> the Pennsylvania Consolidated Statutes may be in the form: "1 Pa.C.S. § 1928 (rule
> of strict and liberal construction)" and the official codifications of other jurisdictions
> may be cited similarly. Quotations from authorities or statutes shall also set forth the

---

[4] Branch first raised these claims on direct appeal.  The Superior Court dismissed both
claims as improperly filed pursuant to *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002).  In
*Grant*, the Pennsylvania Supreme Court held that "as a general rule, a petitioner should wait to
raise claims of ineffective assistance of trial counsel until collateral review."  *Id.* at 738.
Petitioner did re-assert his ineffective assistance of counsel claims in his PCRA appeal.  Thus,
the court must focus on the Superior Court's treatment of those ineffective assistance of counsel
claims presented to it in Branch's PCRA appeal.

> pages from which they are taken. Opinions of an appellate court of this or another
> jurisdiction shall be cited from the National Reporter System, if published therein,
> and to the official reports of Pennsylvania appellate courts, if published therein.

*See Commonwealth v. Clayton*, 816 A.2d 217, 221 (Pa. 2002) (citing Pa. R. App. Pro. 2119(a))

("[I]t is a well settled principle of appellate jurisprudence that undeveloped claims are waived

and unreviewable on appeal."); *Commonwealth v. Berry*, 877 A.2d 479, 485 (Pa. Super. Ct.

2005) (stating that "issues that are not supported by citations to the record and to pertinent legal

authority are waived" and citing Rule 2119).

    Turning to the adequacy and independence of the Superior Court's ruling, I first find that

this waiver rule offers clear guidelines for compliance, and a careful review confirms that state

and federal courts have applied this rule consistently.[5]  Therefore, this requirement provides an

adequate basis for the state court's decision.  Second, the Superior Court was unambiguous in its

application of this procedural rule, and though the court does briefly address the merits of

Branch's ineffective assistance of counsel claims in a footnote, the Superior Court "explicitly

---

    [5] *See, e.g.*, *Ricks v. Pa. Bd. Prob. & Parole*, 08-3182, 2009 WL 101699, *9 n.1 (E.D. Pa. Jan 14, 2009) (stating that "requirements in Pa. R. App. P. 2119 have been repeatedly cited and applied by Pennsylvania courts and form an independent and adequate basis to bar federal relief . . . ."); *Washington v. Patrick*, No. 05-6643, 2007 WL 3231705, *1, 6 (E.D. Pa. Oct. 30, 2007) (finding that failure to comply with Rule 2119 constituted adequate and independent state ground for dismissal of habeas claim); *Clayton*, 816 A.2d at 221 (stating that failure to develop claim in appellate briefing constitutes waiver of that claim on appeal); *Commonwealth v. Liston*, 941 A.2d 1279, 1284 (Pa. Super. Ct. 2008) (finding that petitioner waived claim when he failed to develop argument); *Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. Ct. 2006) (noting that compliance with Rule 2119(a) is "[o]f particular importance" and reminding that "[i]t is not the duty of the Superior Court to act as an appellant's counsel"); *Jones v. Jones*, 878 A.2d 86, 91 (Pa. Super. Ct. 2005) (noting that Rule 2119 "contains mandatory provisions regarding the contents of briefs" and that the Superior Court had consistently held that "[a]rguments that are not appropriately developed are waived" (emphasis and citation omitted)); *Commonwealth v. Price*, 876 A.2d 988, 996 (Pa. Super. Ct. 2005) (holding that failure to offer "discussion, argument or citation to authority" resulted in waiver and citing several cases doing same).

invoke[d] a state procedural bar rule as a separate basis for decision." *Harris*, 489 U.S. at 264

n.1.  Thus, the state procedural ruling is independent of the federal questions raised by petitioner.

Accordingly, because the state waiver rule is adequate to support the judgment and

independent of federal issues, I find that even had Branch raised claims one and two in his habeas

petition as Sixth Amendment challenges, both claims would stand in default.  Moreover, because

Branch does not demonstrate (or attempt to demonstrate) cause and prejudice and has not made

(or attempted to make) a colorable showing of actual innocence, Branch can not overcome his

default.  Thus, even if Branch raised these claims as Sixth Amendment claims in his instant

habeas petition, rather than as due process claims, Branch would not be entitled to habeas relief.

### 2.      Claims 3 and 4

In his third and fourth claims, Branch asserts that his trial counsel's ineffectiveness

violates his Sixth Amendment rights.  For ease of reference, claims three and four read as

follows:

> [3] Petitioner was denied his constitutional right, under the Sixth Amendment of the United States Constitution, to effective assistance of trial counsel, in that counsel failed to object when the state prosecutor unduly bolstered the trial testimony of government witness James Price.

> [4] Petitioner was denied his constitutional right to effective assistance of trial counsel, under the Sixth Amendment of the United States Constitution, in that counsel failed to motion for judgment of acquittal to the charge of criminal conspiracy.

Branch raised these claims in his second PCRA petition, but failed to present them to the

Superior Court in his appeal from the dismissal of his second PCRA petition.  Because Branch

failed to raise these claims in his appeal to the Superior Court, Branch has not exhausted these

claims.  *Bronshtein*, 404 F.3d at 725.  Moreover, because Branch's conviction became final on

October 22, 2004, the time to return to state court to exhaust has passed.  *See* 42 Pa. Con. Stat. §

9545(b)(1) (requiring petitioners to file all PCRA petitions "within one year of the date the

judgment becomes final").  Therefore, claims three and four are procedurally defaulted.  *See*

*Coleman*, 501 U.S. at 735 n.1.

　　　In his habeas petition, Branch himself acknowledged that he failed to exhaust these

claims, but he offered no explanation for his default.  Now, in his objections to the magistrate

judge's Report and Recommendation, Branch raises a governmental interference argument.

Specifically, Branch argues that state prison officials harassed a fellow inmate who had agreed to

assist Branch with his post-conviction proceedings.  Branch asserts that because of the

harassment, the inmate could no longer assist Branch in pursuing Branch's appeals.  Further,

Branch asserts that because he lacks legal training, Branch erroneously omitted claims three and

four from his PCRA appeal.  Without his "jailhouse counsel," Branch was "forced" to re-submit

his direct appeal brief, which, as mentioned, did not include claims three and four.  But for the

prison officials' harassment, Branch contends, the fellow inmate would have assisted him in

drafting and filing his PCRA appeal, which would have included claims three and four.  Thus,

Branch argues that the prison officials' harassment constitutes cause for his default.

　　　Courts, including the Supreme Court, have held that, in appropriate situations,

governmental interference that prevents a petitioner from complying with the relevant state

procedural rules can constitute cause.  *See, e.g.*, *Strickler v. Greene*, 527 U.S. 263, 289 (1999)

(holding that prosecutor's inadvertent failure to disclose exculpatory evidence was cause for

petitioner's failure to exhaust *Brady* claim where "(a) the prosecution withheld exculpatory

evidence; (b) petitioner reasonably relied on the prosecution's open file policy as fulfilling the

prosecution's duty to disclose such evidence; and (c) the Commonwealth confirmed petitioner's reliance on the open file policy by asserting during state habeas proceedings that petitioner had already received 'everything known to the government'"); *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999) (finding cause where petitioner established the fact of nondelivery of petitioner's timely and properly mailed motion).  This case differs markedly from those cases finding that governmental interference constituted cause.  Here, nothing Branch argues remotely suggests that actions of the government and/or its agents precluded Branch himself from learning of, developing, researching, or filing his claims in connection with his second PCRA appeal.  Quite to the contrary, Branch was aware of these claims as Branch *raised them both* in his pro se PCRA petition.  *Cf. Wilson v. Kerestes*, No. 08-0394, 2008 WL 4821788, at *5 n.4 (E.D. Pa. Nov. 5, 2008) (finding that petitioner, who relied on *Strickler* to establish cause, had knowledge of his *Brady* claim and could have, but did not, raise it sooner).  Moreover, nothing prevented Branch from timely filing his PCRA appeal, as evidenced by the fact that the appeal *was indeed timely filed*.  Finally, neither the absence of counsel nor the petitioner's own ignorance constitutes an external impediment.  *See Caswell v. Ryan*, 953 F.2d 853, 862 (3d Cir. 1992).  Simply put, nothing Branch argues suggests that an *external* force impeded his ability to raise these claims in state court.  *See Pinchak*, 392 F.3d at 563.  Therefore, Branch has not demonstrated governmental interference with his state filings.  As this is Branch's only argument proffered to establish cause, I find that Branch has not established cause for his default.

Finally, Branch has not argued and my review has not disclosed evidence that demonstrates Branch's factual innocence.  *See Shlup*, 513 U.S. at 321.  Thus, enforcing the procedural default and dismissing the claims will not work a miscarriage of justice.

19

In summary, because Branch failed to exhaust and therefore defaulted claims three and four of his petition and because Branch has not demonstrated cause for his default or a miscarriage of justice, I will dismiss claims three and four.

**IV.     Conclusion**

In conclusion, I find that Branch's first two claims, sounding in due process, are unexhausted and, alternatively, without merit.  When construed as raising Sixth Amendment challenges, both claims fail due to procedural default.  Claims three and four are also defaulted. Because Branch has not demonstrated cause and prejudice or presented evidence of his actual innocence, Branch is unable to overcome his default and therefore is not entitled to habeas relief. Accordingly, I will dismiss Branch's habeas petition.

Finally, I must determine if I should issue a certificate of appealability.  A court may issue a certificate of appealability only if the defendant "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires that the defendant "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  According to the Supreme Court,

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Id.*  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in

dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Reasonable jurists could not disagree about petitioner's procedural default and his failure to show either cause and prejudice or a miscarriage of justice. Therefore, the court will not issue a certificate of appealability with respect to any of Branch's habeas claims.

Additionally, on the basis of the record before the court, petitioner's due process claims, which attack a state court's application of state law, are without merit. The court is persuaded that reasonable jurists would not find this assessment debatable or wrong. Therefore, defendant has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue with respect to Branch's due process claims.

An appropriate order follows.

21